IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY SHAFER, | ) | CASE NO. 1:06CV00648 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| JULIUS WILSON, WARDEN, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Anthony Shafer's ("Shafer") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on March 22, 2006. Shafer is in the custody of the Richland Correctional Institution pursuant to his conviction in *State of Ohio v. Shafer,* Case no. CCP CR391538 (Cuyahoga County 2000). For the reasons set forth below, the magistrate judge recommends that the court grant Shafer's petition in part and overrule it in part.

I

The state appellate court reviewing the conviction challenged in this petition described the following facts as relevant to the case:

This is an appeal from a jury verdict, following trial before Judge Timothy J. McGinty,

that convicted appellant Anthony Shafer on one count of rape of a child under the age of thirteen and four counts of gross sexual imposition ("GSI").

Sometime in 1992 or 1993 Shafer met the female victim and her parents at a church in Cleveland and, because of attendance in a weekly Bible study group, became friends. In 1996, at approximately the same time that Shafer's marriage was breaking up, he began to spend more time with that family. He would visit their home several times a week, occasionally cook meals for them, and frequently brought his young sons with him. He soon had a key and free access to the family's home, and he stayed there for several weeks around June 1997, when the family took an extended vacation to Florida.

Both Shafer, then thirty-two years of age, and the parents agree that around 1997 the victim, then age eleven years, acted as though she had a "crush" on him because she would always follow him around, and wanted to be near him or sit on his lap. On one occasion as the family and Shafer were watching a "Jerry Springer Show" dealing with relationships between very young women and much older men, the group joked that maybe Shafer and the victim would marry someday. Shafer claimed that in order to set appropriate boundaries he asked the father whether he could engage in a relationship with the victim when she became eighteen years old, and that the father responded along the lines of, "we'll see." Although the father denied that any such conversation had taken place, Shafer stated that he was shocked and appalled by the response. The parents contended that, at the time, they did not notice anything that would indicate that Shafer and their daughter had engaged in any inappropriate behavior.

In September 1997, Shafer, the parents, and several others decided to form their own non-denominational church and to have Shafer serve as the pastor. To this end, the parents provided him with access to their credit card, bought him a used car for $600 and provided a cell phone and pager. Shafer, who at this time was collecting worker's compensation benefits, would also receive any donations from members of the congregation. By September of 1998, the church had not progressed as hoped, was losing money, and was disbanded. It appears some bitterness developed between Shafer and the parents, and he no longer associated with the family.

Sometime in early 1999, the victim was having trouble sleeping and while talking with her mother told, in a limited fashion, about how Shafer had touched her inappropriately and kissed her. While both parents were disturbed by her comments, they took no action until August of 1999, when, in another late-night conversation, she claimed that he had touched her buttocks, breasts and genital area. The parents then called the police and Cleveland Patrolman Raymond O'Connor took a statement from the victim in which she alleged inappropriate touching, but no conduct which would form the basis for a rape charge. In December of 1999, during an interview with Detective Alan Strickler of the Sex Crimes Unit, she alleged not only inappropriate kissing and touching by Shafer, but also two instances where he had her perform oral sex on him, and one occasion when he had digitally penetrated her in the family's kitchen while her parents and his two sons were watching television in the adjoining living room.

2

*Shafer,* 2002 WL 31722127, *2-7 (Ohio App. Dec. 5, 2002) (footnotes omitted).

On May 22, 2000 the Cuyahoga County Grand Jury returned a six count indictment charging Shafer with two counts of rape of a victim under 13 years of age with sexual violent predator specifications and four counts of gross sexual imposition of a victim under 13 years of age.  A jury found Shafer guilty of one count of rape without the sexual violent predator specification and guilty of four counts of gross sexual imposition as charged.

The trial court sentenced Shafer on May 11, 2001 to a prison term of five years on the count of rape and to a term of one year on each count of gross sexual imposition, with the one-year sentences to run concurrently with each other but consecutive to the five-year sentence.  The court also sentenced Shafer to three years' post-release monitoring.  The court found Shafer to be an habitual sex offender on September 14, 2001 and advised him of his duty to register pursuant to such a finding.

Shafer filed a timely notice of appeal through new counsel in the state appellate court. Shafer asserted 11 assignments of error:

ASSIGNMENT OF ERROR I:  THE TRIAL COURT IMPROPERLY AMENDED COUNT ONE OF THE INDICTMENT WHEN IT EXPANDED THE TIME SPAN DURING WHICH THE OFFENSE WAS ALLEGEDLY COMMITTED FROM THREE MONTHS TO TWENTY-FOUR MONTHS.

ASSIGNMENT OF ERROR II:  THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST BE UNANIMOUS IN ITS DETERMINATION AS TO THE CONDUCT OF MR. SHAFER THAT CONSTITUTED THE SEXUAL CONDUCT FOR WHICH MR. SHAFER WAS CONVICTED IN COUNT ONE AND THE FOUR INDIVIDUAL ACTS OF GROSS SEXUAL IMPOSITION FOR WHICH MR. SHAFER WAS CONVICTED IN COUNTS THREE THROUGH SIX, RESPECTIVELY.

ASSIGNMENT OF ERROR III:  THE TRIAL COURT COMMITTED PLAIN ERROR WITH RESPECT TO COUNTS THREE THROUGH SIX WHEN IT FAILED TO INSTRUCT THE JURY THAT ANY CONVICTION FOR GROSS SEXUAL

3

IMPOSITION HAD TO HAVE OCCURRED AT THE DURR RESIDENCE, THUS PRECLUDING CONVICTION FOR THOSE ALLEGED ACTS OF GGROSS [sic] SEXUAL IMPOSITION THAT ALLEGEDLY OCCURRED AT MR. SHAFER'S MOTHER'S RESIDENCE.

ASSIGNMENT OF ERROR IV:  THE PROSECUTION VIOLATED MR. SHAFER'S CONSTITUTIONAL RIGHTS UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN IT ENGAGED IN IMPROPER CLOSING ARGUMENT DESIGNED TO APPEAL TO THE PASSIONS OF THE JURY AND WHICH ALSO INCLUDED IMPROPER ATTACKS ON DEFENSE COUNSEL.

ASSIGNMENT OF ERROR V: MR. SHAFER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.

ASSIGNMENT OF ERROR VI:  THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

ASSIGNMENT OF ERROR VII:  THE TRIAL COURT VIOLATED MR. SHAFER'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO TRIAL BY JURY AND DUE PROCESS WHEN IT DIRECTED THE JURY TO FIND THAT THE DEFENDANT WAS THE SAME "ANTHONY SHAFER" ABOUT WHOM THE WITNESSES TESTIFIED.

ASSIGNMENT OF ERROR VIII:  THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY THAT DETECTIVE STRICKLER'S OPINION TESTIMONY REGARDING BETHANY DURR'S CREDIBILITY COULD NOT BE CONSIDERED FOR ITS TRUTH BUT ONLY IN THE JURY'S EVALUATION OF DETECTIVE STRICKLER'S CREDIBILITY.

ASSIGNMENT OF ERROR IX:  THE TRIAL COURT ERRED WHEN IT IMPOSED MORE THAN THE MINIMUM TERMS OF IMPRISONMENT FOR THE GROSS SEXUAL IMPOSITION OFFENSES ON MR. SHAFER, A FIRST OFFENDER, WITHOUT MAKING THE NECESSARY FINDINGS REQUIRED BY R.C. 2929.14(B).

ASSIGNMENT OF ERROR X:  THE TRIAL COURT ERRED BY ORDERING THAT THE SENTENCES ON COUNTS THREE THROUGH SIX WOULD BE CONSECUTIVE TO THAT IMPOSED ON COUNT ONE.

ASSIGNMENT OF ERROR XI:  THE CLASSIFICATION OF MR. SHAFER AS AN HABITUAL SEXUAL OFFENDER SHOULD BE VACATED.

4

On December 16, 2002, the state appellate court affirmed Shafer's conviction but vacated his sentence.  The appellate court remanded the case for re-sentencing due to the trial court's failure to state on the record that Shafer satisfied any criterion necessary to validly impose consecutive sentences.

On January 30, 2003, Shafer filed a timely notice of appeal and memorandum in support of jurisdiction in the Ohio Supreme Court.  In his appeal, Shaffer asserted nine propositions of law:

PROPOSITION OF LAW I:  A TRIAL COURT ERRS WHEN IT PERMITS THE STATE TO AMEND THE INDICTMENT BY SIGNIFICANTLY EXPANDING THE TIME FRAME WITHIN WHICH THE ALLEGED OFFENSES WERE COMMITTED.

PROPOSITION OF LAW II:  WHEN A TRIAL COURT ANNOUNCES SUA SPONTE THAT IT WILL AMEND AN INDICTMENT, DEFENSE COUNSEL NEED NOT NOTE AN OBJECTION IN ORDER TO PRESERVE THE ISSUE FOR REVIEW ON APPEAL.

PROPOSITION OF LAW III:  A TRIAL COURT COMMITS PLAIN ERROR WHEN IT FAILS TO INSTRUCT THE JURY THAT IT MUST BE UNANIMOUS IN ITS DETERMINATION AS TO THE CONDUCT THAT THE JURY BELIEVES CONSTITUTES A PARTICULAR OFFENSE.

PROPOSITION OF LAW IV:  A TRIAL COURT COMMITS PLAIN ERROR WHEN IT FAILS TO INSTRUCT THE JURY THAT THE STATE MUST PROVE THAT THE ALLEGED CRIME WAS COMMITTED AT OR NEAR THE LOCATION SPECIFIED IN THE BILL OF PARTICULARS.

PROPOSITION OF LAW V:  IT IS PLAIN ERROR IN VIOLATION OF THE FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND TRIAL BY JURY UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION FOR A PROSECUTOR TO GO BEYOND THE EVIDENCE AND COMMENT IN CLOSING ARGUMENT ON THE JURY'S RESPONSIBILITY TO DO JUSTICE FOR A VICTIM OF CRIME, AS WELL AS ON THE CHARACTER OF A CRIMINAL DEFENDANT AND THE CHARACTER OF A DEFENDANT'S COUNSEL.

PROPOSITION OF LAW VI:  COUNSEL IS INEFFECTIVE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT'S GUARANTEES TO BE REPRESENTED BY COUNSEL AND TO DUE PROCESS WHEN COUNSEL FAILS TO OBJECT TO (1) EXPANSIVE AMENDMENTS TO THE INDICTMENT AND (2) IMPROPER COMMENTS BY THE PROSECUTOR IN CLOSING ARGUMENT.

PROPOSITION OF LAW VII:  COUNSEL IS INEFFECTIVE IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT'S GUARANTEES TO BE REPRESENTED BY COUNSEL AND TO DUE PROCESS WHEN COUNSEL FAILS TO REQUEST THAT THE JURY BE INSTRUCTED ON THE NEED TO (1) BE UNANIMOUS IN ITS PARTICULAR DETERMINATION OF THE TYPE OF CRIMINAL ACTIVITY COMMITTED IN EACH COUNT OF CONVICTION, (2) CONFINE ITS CONSIDERATION OF OFFENSES TO THOSE COMMITTED AT OR NEAR THE LOCATION SPECIFIED IN THE BILL OF PARTICULARS, AND (3) CONFINE ITS CONSIDERATION OF A POLICE OFFICER'S BELIEF IN THE DEFENDANT'S GUILT SOLELY TO THE ISSUE OF THE OFFICER'S BIAS, AND NOT AS SUBSTANTIVE EVIDENCE OF THE DEFENDANT'S GUILT.

PROPOSITION OF LAW VIII:  A TRIAL COURT COMMITS PLAIN ERROR WHEN IT INSTRUCTS THE JURY THAT IT IS REQUIRED IN A CRIMINAL CASE TO ACCEPT STIPULATED FACTS AS PROVEN.

PROPOSITION OF LAW IX:  A TRIAL COURT COMMITS PLAIN ERROR WHEN IT FAILS TO INSTRUCT THE JURY THAT A POLICE OFFICER'S OPINION TESTIMONY REGARDING A DEFENDANT'S GUILT CAN ONLY BE CONSIDERED FOR THE LIMITED PURPOSE OF EVALUATING THE OFFICER'S POSSIBLE BIAS AND NOT AS SUBSTANTIVE EVIDENCE OF THE DEFENDANT'S GUILT.

The Ohio Supreme Court dismissed the appeal on April 23, 2003 as failing to raise any

substantial constitutional question.

The state trial court re-sentenced Shafer on July 9, 2003.  The trial court imposed the same

terms of imprisonment as it imposed in sentencing Shafer on May 11, 2001.

Shafer filed in the state appellate court a timely notice of appeal from his re-sentencing.  In

his brief Shafer asserted one assignment of error:

ASSIGNMENT OF ERROR I:  THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES WHEN IT FAILED TO MAKE FINDINGS REQUIRED BY R.C. 2929.14(E)(4) WITH REASONS IN SUPPORT THEREOF.

On June 1, 2004, the state appellate court affirmed the trial court's re-sentencing.

Shafer filed a timely notice of appeal and memorandum in support of jurisdiction in the Ohio

Supreme Court.  Shafer asserted four propositions of law in his appeal:

6

PROPOSITION OF LAW I: TO CONSTITUTE "GREAT OR UNUSUAL" HARM IN ORDER TO JUSTIFY THE IMPOSITION OF A CONSECUTIVE SENTENCE, THE TRIAL COURT MUST FIND THAT, APART FROM THE OFFENSE CONDUCT OR THE OFFENDER'S PERSONAL CHARACTERISTICS, THAT THE VICTIM SUFFERED THE TYPE OF HARM THAT GREATLY EXCEEDS OR IS VASTLY DIFFERENT FROM THE HARM NORMALLY ASSOCIATED WITH SUCH AN OFFENSE.

PROPOSITION OF LAW II: IN ORDER TO IMPOSE CONSECUTIVE SENTENCES, A TRIAL COURT MUST EXPLICITLY FIND THAT THE SENTENCE TO BE IMPOSED IS NOT DISPROPORTIONATE TO THE DANGER TO THE COMMUNITY POSED BY THE OFFENDER, AND FURNISH REASONS THAT HAVE A LOGICAL NEXUS TO THAT PARTICULAR FINDING.

PROPOSITION OF LAW III: A DEFENDANT'S FAILURE TO ACCEPT RESPONSIBILITY FOR HIS ACTIONS IS NOT A VALID REASON JUSTIFYING THE FINDING THAT CONSECUTIVE SENTENCES ARE NOT DISPROPORTIONATE TO THE DANGER POSED BY THE DEFENDANT.

PROPOSITION OF LAW IV: ANY FACT RELIED UPON TO IMPOSE A SENTENCE BEYOND ITS PRESUMPTIVE LIMITS MUST HAVE BEEN FOUND BY A JURY BEYOND A REASONABLE DOUBT.

On October 13, 2004, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Shafer filed in federal district court a petition for writ of habeas corpus on July 22, 2004 while his appeal of his re-sentencing was pending in the Ohio Supreme Court. Shafer raised four grounds for relief in his petition for a writ of habeas corpus:

A. Ground one: MR. SHAFER WAS DENIED HIS RIGHT TO DUE PROCESS WHEN THE TRIAL COURT AMENDED THE INDICTMENT TO SIGNIFICANTLY EXPAND THE TIME FRAME WITHIN WHICH THE ALLEGED OFFENSES WERE COMMITTED.

B. Ground two: THE TRIAL COURT DENIED MR. SHAFER HIS RIGHT TO DUE PROCESS AND TRIAL BY JURY WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST BE UNANIMOUS AS TO THE CONDUCT THAT THE JURY BELIEVED CONSTITUTED A PARTICULAR OFFENSE.

C. Ground three: MR. SHAFER WAS DENIED HIS RIGHT TO DUE PROCESS AND TRIAL BY JURY WHEN THE PROSECUTOR ARGUED BEYOND THE EVIDENCE IN

CLOSING ARGUMENT AND APPEALED TO THE PASSIONS OF THE JURY BY URGING THE JURY TO DO JUSTICE FOR THE VICTIM AND BY COMMENTING ON THE DEFENDANT'S CHARACTER AND THE CHARACTER OF DEFENSE COUNSEL.

D.  Ground four:  MR. SHAFER RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO IMPROPER JURY INSTRUCTIONS, FAILED TO OBJECT TO THE IMPROPER AMENDMENT OF THE INDICTMENT, FAILED TO OBJECT TO IMPROPER CLOSING ARGUMENTS OF THE PROSECUTOR, FAILED TO REQUEST THAT THE JURY BE INSTRUCTED ON THE NEED TO BE UNANIMOUS AS TO WHAT CONDUCT CONSTITUTED A SPECIFIC OFFENSE, FAILED TO REQUEST THAT THE JURY BE INSTRUCTED AS TO DATES AND TIMES OF OFFENSE THAT CORRELATED WITH THE BILL OF PARTICULARS, AND FAILED TO REQUEST THAT THE JURY BE INSTRUCTED TO CONFINE ITS CONSIDERATION OF THE POLICE OFFICER'S OPINION ABOUT THE DEFENDANT'S GUILT TO THE ISSEU [sic] OF THE OFFICER'S BIAS AND NOT AS SUBSTANTIVE EVIDENCE OF GUILT.

On December 8, 2004, Shafer filed a motion to stay the action so that he could petition the United States Supreme Court for a writ of certiorari to review his re-sentencing.  The district court denied a stay and dismissed the action on January 11, 2005 with leave to refile.

Shafer filed a timely petition for writ of certiorari on January 11, 2005.  On May 16, 2005 the United States Supreme Court denied his petition for writ of certiorari.

Shafer refiled his petition for a writ of habeas corpus on March 21, 2006.  Shafer asserts the four grounds for relief in his original habeas action and asserts one additional ground for relief:

A.  Ground one:  MR. SHAFER WAS DENIED HIS RIGHT TO DUE PROCESS WHEN THE TRIAL COURT AMENDED THE INDICTMENT TO SIGNIFICANTLY EXPAND THE TIME FRAME WITHIN WHICH THE ALLEGED OFFENSES WERE COMMITTED.

B.  Ground two:  THE TRIAL COURT DENIED MR. SHAFER HIS RIGHT TO DUE PROCESS AND TRIAL BY JURY WHEN IT FAILED TO INSTRUCT THE JURY THAT IT MUST BE UNANIMOUS AS TO THE CONDUCT THAT THE JURY BELIEVED CONSTITUTED A PARTICULAR OFFENSE.

C.  Ground three:  MR. SHAFER WAS DENIED HIS RIGHT TO DUE PROCESS AND TRIAL BY JURY WHEN THE PROSECUTOR ARGUED BEYOND THE EVIDENCE IN

8

CLOSING ARGUMENT AND APPEALED TO THE PASSIONS OF THE JURY BY URGING THE JURY TO DO JUSTICE FOR THE VICTIM AND BY COMMENTING ON THE DEFENDANT'S CHARACTER AND THE CHARACTER OF DEFENSE COUNSEL.

D.  Ground four:  MR. SHAFER RECEIVED THE INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO IMPROPER JURY INSTRUCTIONS, FAILED TO OBJECT TO THE IMPROPER AMENDMENT OF THE INDICTMENT, FAILED TO OBJECT TO IMPROPER CLOSING ARGUMENTS OF THE PROSECUTOR, FAILED TO REQUEST THAT THE JURY BE INSTRUCTED ON THE NEED TO BE UNANIMOUS AS TO WHAT CONDUCT CONSTITUTED A SPECIFIC OFFENSE, FAILED TO REQUEST THAT THE JURY BE INSTRUCTED AS TO DATES AND TIMES OF OFFENSE THAT CORRELATED WITH THE BILL OF PARTICULARS, AND FAILED TO REQUEST THAT THE JURY BE INSTRUCTED TO CONFINE ITS CONSIDERATION OF THE POLICE OFFICER'S OPINION ABOUT THE DEFENDANT'S GUILT TO THE ISSEU [sic] OF THE OFFICER'S BIAS AND NOT AS SUBSTANTIVE EVIDENCE OF GUILT.

E.  Ground five:  MR. SHAFER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO TRIAL BY JJURY [sic] BECAUSE THE TRIAL COURT IMPOSED A SENTENCE OF SIX YEARS OF IMPRISONMENT, WHICH EXCEEDED THE PRESUMPTIVE MINIMUM AND CONCURRENT SENTENCE OF THREE YEARS UNDER OHIO LAW, ON THE BASIS OF FINDINGS ESSENTIAL TO PUNISHMENT THAT WERE MADE BY THE TRIAL JUDGE ALONE, NOT REFLECTED IN THE JURY'S VERDICT AND NOT ADMITTED BY THE DEFENDANT.

Respondent filed a Return of Writ on July 27, 2006.  Thus, the petition is ready for decision.

II

A.  *Jurisdiction*

Shafer is in the custody of Richland Correctional Institution in Mansfield, Ohio and was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio.  Shafer filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a state court of a state which contains two or more Federal judicial districts, the

9

application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the state court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a)&(d).  This court has jurisdiction over Shafer's claims.

B.  *Evidentiary Hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or inadequately recorded.  *See* 28 U.S.C. § 2254(d). There is no need for an evidentiary hearing in the instant case.  All of Shafer's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.  *Exhaustion of State Remedies*

A state prisoner must have no remaining state remedies prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Riggins v. Macklin,* 936 F.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context.  *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims. *Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

Shafer has no remaining state remedies.  His claims, therefore, are exhausted.

D.  *Procedural Default*

Respondent argues that Shafer has procedurally defaulted his first, second, and third grounds for habeas relief.  Procedural default occurs when a petitioner fails to present fairly his constitutional

10

claims to the highest state court in a federal constitutional context. *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750.

Shafer failed to contemporaneously object at trial to the amendment of the indictment, the

jury charge, and the prosecutor's closing argument.  In *Engle v. Isaac,* 456 U.S. 107, 124-129 (1982), the Supreme Court specifically found that default imposed for failure to object contemporaneously as required by Ohio's Rule 30 is an adequate and independent state ground to bar federal habeas review absent a showing of cause and prejudice." *Scott v. Mitchell,* 209 F.3d 854, 867 (6th Cir. 2000).  Shafer does not show cause and prejudice for his procedural default, nor does he show that it would be a fundamental miscarriage of justice if these claims are not heard.  For these reasons the magistrate judge recommends that the court find that Shafer has defaulted his first, second, and third grounds for relief.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Williams v. Taylor,* 529 U.S. 362, 379-90 (2000); *Miller v. Francis,* 269 F.3d 609, 613-14 (6th Cir. 2001).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Harris v. Stovall,* 212 F.3d 940, 943-44 (6th Cir. 2000).

12

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in §2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of*...clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams,* 529 U.S. at 405 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* A decision involves unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano,* 237 F.3d 722, 729-31 (2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id*. at 730.

"[A] determination of a factual issue made by a state court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Shafer's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.  *Whether Shafer received ineffective assistance of counsel in violation of his constitutional rights.*

13

Shafer contends in his fourth ground for relief that he received ineffective assistance of trial counsel for the following reasons:

(1) failing to object to improper jury instructions;

(2) failing to object to the amended indictment;

(3) failing to object to improper closing arguments of the prosecutor;

(4) failing to request that the jury be instructed on the need to be unanimous as to what conduct constituted a specific offense;

(5) failing to request that the jury be instructed as to dates and times of offenses that correlated with the bill of particulars; and,

(6) failing to request that the jury be instructed that the police officer's opinion testimony that Shafer was guilty was not substantive evidence of guilt.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must

14

show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the

15

defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Shafer contends that his attorney's failure contemporaneously to object to an improper jury instruction amounts to ineffective assistance of counsel. Shafer does not specify which part of the jury instruction was objectionable. He describes the jury instruction only in his consolidated statement of facts relating to stipulations:

> These stipulations were reached and must be accepted as facts. No further evidence need be brought out. The only stipulations here were just simple issues regarding the witnesses identifying the defendant.

Shafer offers no explanation as to why failing to object to such a charge amounts to ineffective assistance of his trial counsel. The only disputed issue at trial was whether Shafer committed the alleged illegal acts. His identity was not an issue. Counsel had no reason to object to a stipulation that the defendant was in fact Shafer. There is no showing from these facts that counsel's failure to object to the jury charge fell below an objective standard of reasonableness or that Shafer was in any way prejudiced by the alleged error. Shafer's argument regarding a failure to object to the jury instruction is not, therefore, well taken.

Shafer also argues he was denied ineffective assistance of counsel when the trial court amended the indictment to expand the time frame within which the alleged crimes had been committed. The trial record reflects that the original indictments specified that the two rape counts were alleged to have occurred between March and May of 1997. The judge noted during a recess that the indictment was being amended to include dates between March 1997 and September 1998.

16

Shafer's attorney failed contemporaneously to object to this amendment.

Under Ohio Rev. Code Ann. § 2941.03(E), an indictment or information is sufficient if it can be understood therefrom that the offense was committed at some time prior to the filing of the indictment. An indictment is not invalid for failing to state the time of an alleged offense or doing so imperfectly. Ohio Rev. Code. Ann. § 2941.08(B), (C). In *State v. Murrell,* 72 Ohio App. 3d 668, 595 N.E.2d 982 (1991), the court permitted the state to amend a sexual abuse indictment to expand the dates of the offenses and held that this did not prejudice the defendant or deny him due process of law, especially since the defendant was not asserting alibi as a defense.

In *State v. Barnecut,* 44 Ohio App. 3d 149, 542 N.E.2d 353 (1988), however, the court held:

> Appellant's due process rights to a fair trial were violated when the trial court allowed the indictment to be amended with regard to the first two counts after the state's case-in-chief was completed. If no evidence is presented that the alleged offenses occurred within the bracketed time frames specified in the indictment, the counts in the indictment relating to those offenses should be dismissed. . . . This analysis suggests a bright-line test, *i.e.,* that an accused be tried for the crimes alleged in the indictment, and that any evidence outside the time period established in the indictment may constitute a separate offense requiring separate process.

*Barnecut,* 44 Ohio App. 3d 149 at 152, 542 N.E.2d at 356. This holding does not avail Shafer's claim of ineffective assistance of counsel because the facts in *Barnecut* were critically different from the instant case. While the state in *Barnecut* attempted to amend the indictment *after* its case in chief, the indictment in Shafer's case was amended *before* the jury was selected. *Barnecut* concedes that a defendant is not prejudiced by the failure of the indictment to specify dates and times upon which charged offenses allegedly occurred if such failure does not impose material detriment to preparation of his defense. *Barnecut,* 44 Ohio App. 3d 149, at 149, 542 N.E.2d at 353. The amended indictment did not impose a material detriment to the preparation of Shafer's defense because he was not relying on an alibi defense to prove his innocence. Shafer argued that the victim

was lying about the allegations.  Therefore, it was irrelevant to Shafer's defense when the alleged

crimes took place.  Failing to object to the amendment of the indictment was not unreasonable and

cannot ground a claim of ineffective assistance of counsel.

Shafer also argues that he was denied effective assistance of counsel when his attorney failed

to object when the prosecutor argued beyond the evidence in closing argument and appealed to the

passions of the jury by (1) urging the jury to do justice for the victim and (2) commenting on the

character of Shafer and his trial attorney.  The prosecutor stated the following during closing

argument:

> We protect our children as a society, and that's the way it should be.  And what we have in
> this case is a classic example of why the law is written that way . . . [W]e, as a society, have
> a duty to do the same thing [victim's parents] are doing.  We have a duty to protect this
> child. . . .

> Defense counsel tries to paint her as some kind of troubled child.  That's another classic.
> If she has any troubles, you know why she has them.  It's that this defendant over here, this
> pedophile, caused her to have troubles.  He's a very subtle spin doctor, very subtle, [defense
> counsel] is. . . .

> If you don't know what a pedophile looks like, just look right over there.  Look right at him.
> There is a pedophile sitting right there looking at you.

"A prosecutor does not act improperly in calling for justice for the people of Ohio."  *State

v. Slagle,* 65 Ohio St. 3d 597, 611, 605 N.E.2d 916, 930 (1992).  The Ohio Supreme Court has held

that it was not plain error in a homicide trial when the prosecutor during closing remarks said:

> the effects of this murder . . . are far reaching, not only to the family members, but
> throughout our community.  But the faith in justice, the faith in the justice system depends
> on all of you doing your jobs . . . as sworn jurors . . . to follow the law.

*State v. Bey,* 85 Ohio St. 3d 487, 496, 709 N.E.2d 484, 493 (1999) (citing to *Slagle, supra*).  In *State

v. Smith,* 14 Ohio St. 3d 13, 15, 470 N.E.2d 883, 885 (1984), the court found it improper when the

prosecutor in the closing arguments referred to defense evidence as "lies," "garbage," "garbage lies,"

18

and "a smoke screen" in addition to suggesting the defense counsel had suborned perjury without having any substantial evidence. However, even if the prosecutor makes several improper comments, the correct inquiry is whether the improper comments or actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986). The Supreme Court has indicated that state courts have substantial breathing room when considering prosecutorial misconduct claims because "constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise." *Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974).

In the instant case, although the prosecutor's closing comments were arguably improper, they are insufficient to warrant habeas relief for ineffective assistance of counsel. The aggregate effect of the prosecutor's comments did not rob Shafer of a fair trial. The state had a strong case against Shafer as a result of the testimony of the victim and inconsistencies in Shafer's own statements. Indeed, the state appellate court found that these comments did not undermine the fairness of the proceedings or prejudice Shafer's ability to have a fair trial. *Shafer,* 2002 WL 31722127, at 15. Shafer fails to show by clear and convincing evidence that the appellate court erred in its determination. "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside,* 457 U.S. 157, 175 (1986). There is no reasonable probability that, had counsel made contemporaneous objections to the comments, the jury would have found Shafer innocent.

Shafer also argues he was denied effective assistance of counsel when his attorney did not object to the court's failure to instruct the jury that it must be unanimous as to the conduct

constituting a particular offense.  Shafer was charged with rape under Ohio Rev. Code § 2907.02(A)(2) ("§ 2907(A)"), which provides that "no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The same statute defines sexual conduct as "vaginal intercourse, anal intercourse, fellatio, and cunnilingus between persons." § 2907(A).  In *State v. Thompson,* 33 Ohio St. 3d 1, 11, 514 N.E.2d 407, 417 (1987), the court determined that it was not necessary to instruct the jury to make a specific finding as to whether the appellant committed either vaginal rape, anal rape, or both.  "The statute (§ 2907.02) simply does not require, as appellant asserts, that a specific finding be made as to the *type* of rape."  *Id..,* 33 Ohio St. 3d at 12,  514 N.E.2d 407 at 418.

There is no requirement under Ohio law that a judge charge a jury that it must find that a defendant engaged in one or more particular acts when there are several acts which constitute "sexual conduct."  *Id.,* 33 Ohio St. 3d at 18,  514 N.E.2d 407 at 418.  Shafer's attorney's performance did not fall below an objective standard of reasonableness, therefore, by failing to object to the jury instruction.  Shafer's claim of ineffective assistance of counsel has no merit as to the attorney's failure to object to the court's jury charge on this point.

Shafer's fifth argument that trial counsel was ineffective rests on his trial attorney's failure to request that the jury be instructed that the dates and times of the alleged offenses must correspond with the dates and times in the bill of particulars.  At trial, the state questioned the victim about an alleged gross sexual imposition that took place in Shafer's mother's basement.  Shafer's trial attorney did not object and cross-examined the victim concerning these events.  The bill of particulars and the subsequent amendments produced by the state alleged that all the acts of rape and gross sexual imposition occurred in the victim's home.  Shafer contends that it was error for counsel

20

not to request a jury instruction requiring the bill of particulars match with the dates and times of the offenses because such an instruction would have effectively excluded this gross sexual imposition charge.

The Ohio Supreme Court has held that a certain degree of inexactitude is acceptable in traumatic sexual abuse cases against children of tender years. *State v. Lawrison,* 49 Ohio St. 3d 238, 551 N.E.2d 1261 (1990). The purpose of a bill of particulars is "to inform the defendant of the nature of the charge with sufficient precision to enable the defendant to prepare for trial, to prevent surprise, or to enable the defendant to plead an acquittal or conviction in bar of another prosecution for the same offense. *State v. Clay,* 29 Ohio App. 2d 206, 214, 280 N.E.2d 385, 393 (1972).

In Shafer's case, the evidence introduced did not differ materially from the charges in the bill of particulars or prevent him from adequately preparing for trial. The nature of Shafer's defense consisted of attempting to discredit the victim while bolstering his own credibility. Shafer made no attempt to prove he was elsewhere during the alleged events. Counsel did not need to request a jury instruction explaining that the dates and times of the alleged offenses must correspond with the dates and times in the bill of particulars. Such an instruction would have been superfluous given the nature of Shafer's defense. Trial counsel's performance did not fall below an objective standard of reasonableness. Therefore, Shafer's argument that his counsel was ineffective for failing to request a jury instruction that the dates and times of the alleged offenses must correspond with the dates and times in the bill of particulars is without merit.

Shafer's final argument in his fourth ground for relief is that counsel erred in failing to request that the jury be instructed that a police detective's opinion was not substantive evidence of guilt. The following colloquy between defense counsel and a police detective investigating Shafer's

21

case describes the detective's opinion abut the case:

> Defense Counsel: "The real story is what the state–the witnesses the state put on, right?  What the victim told you.  That's the true story."

> Detective: "That's the story I believe."

* * * * *

> Defense Counsel: "[W]hat you're telling us here is that basically when this defendant gave his statement, he came down to impress you and your partner . . . he wanted to impress you?"

> Detective: "That's what I believe."

> Defense Counsel: "So according to you, he's guilty and that's it.  He did these things, right?"

> Detective: "I believe he's guilty, yeah."

Though counsel opened the door for the witness to give damaging testimony against Shafer, this testimony was part of counsel's sound trial strategy.  Counsel was attempting to argue that the police did not perform a thorough investigation of Shafer's case because they failed to take statements from several other possible sources of information.  It was counsel's theory that the police took the victim's statement and immediately concluded that Shafer was guilty without further investigation.  In the above passage, counsel was deliberately attempting to get the detective to admit that he believed Shafer was guilty of the crime.  Such a choice was not unreasonable, and it cannot now be challenged as ineffective assistance of counsel.  *Strickland*, 466 U.S. at 690.

For the above reasons the magistrate judge recommends that the court overrule Shafer's fourth assignment of error.

**B.**  *Whether Shafer was denied his Sixth Amendment right to trial by jury because his sentence was based on findings of fact made by the trial judge.*

Shafer argues in his fifth ground for relief that his re-sentencing violated his Sixth Amendment right to a trial by jury because the trial court imposed a sentence which exceeded the

22

presumptive minimum and imposed consecutive sentences based on findings of fact made by the trial judge.  Respondent answers that Shafer did not suffer prejudice from his re-sentencing and that any error in his sentence was harmless.

Shafer contends that the sentence imposed on remand violated the holding in *Blakely v. Washington,* 542 U.S. 296 (2004).  *Blakely* was decided approximately three weeks before Shafer filed his notice of appeal from his re-sentencing hearing  in the Ohio Supreme Court.  The *Blakely* decision applies to Shafer's case because his re-sentencing had not become final.  *Johnson v. United States,* 246 F.3d 655, 657 (6th Cir. 2001) ("As a general matter, a conviction becomes final for purposes of collateral attack at the conclusion of direct review.").

*Blakely* clarified a rule established in *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely* explained the "statutory maximum" for *Apprendi* purposes:

> The relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment."

*Blakely,* 542 U.S. at 296 (citations omitted).

Shafer does not specify which Ohio sentencing statutes violate the holdings of *Apprendi* and *Blakely.*  The core Ohio sentencing statute is found at Ohio Rev. Code § 2929.14.[1] This provision states in relevant part:

---

[1] In *State v. Foster,* 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme Court found the Ohio statutes requiring judicial findings prior to the imposition of maximum, non-minimum, or consecutive sentences violates a defendant's Sixth Amendment right to a jury trial on the facts relied upon in enhancing a sentence.

(A) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(4), (D)(5), (D)(6), or (G) of this section and except in relation to an offense for which a sentence of death or life imprisonment is to be imposed, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:

(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years . . . .

(3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years . . . .
(B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies: . . .

(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

(C) Except as provided in division (G) of this section or in Chapter 2925 of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes . . .

(E) . . . (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following: . . .

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

In sum, an Ohio court must sentence a defendant to the shortest term of imprisonment. This means

that a court may sentence a defendant to a prison term of three years for a felony of the first degree

and to a prison term of one year for a gross sexual imposition felony of the third degree, unless the court finds the shortest term of imprisonment will demean the seriousness of the defendant's conduct or will not adequately protect the public from future crimes. The Ohio statute allows the court to impose consecutive sentences if multiple prison terms are imposed on the offender and the court finds that either (1) consecutive sentences are necessary to protect the public from future crime or (2) that multiple offenses were committed as part of one course of conduct and the harm caused by the multiple offenses is so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct.

Shafer was found guilty of one count of rape of a victim under 13 years of age and of four counts of gross sexual imposition upon a victim under 13 years of age. Rape is a felony of the first degree. Ohio Rev. Code § 2907.02(B). Gross sexual imposition upon a person less than 13 years old is a felony of the third degree. Ohio Rev. Code § 2907.05(B). The presumptively correct minimum sentence for a felony of the first degree is three years, and the presumptive minimum for a felony of the third degree is one year. The trial court sentenced Shafer to a prison term of five years on the count of rape and to a term of one year on each count of gross sexual imposition, with the one-year sentences to run concurrently with each other but consecutive to the five-year sentence.

The trial court made the following statement when it re-sentenced Shafer on July 9, 2003:

Your conduct was reprehensible. . . . And the consecutive sentences is [sic] necessary to protect the public from future crimes by you and others like you.
You took advantage of a – of a vulnerable little girl as a full pledged [sic] adult in a position of trust that she and the family trusted because of your religious position and you took advantage of the girl. It's a kid. Doesn't take much to con a kid. You conned a kid or as the mother said, you brainwashed the little girl, it's reprehensible conduct to engage in such sexual activity with a child and obviously adding a year consecutive for all the concurrent crimes of gross sexual imposition is not disproportionate to the seriousness of your conduct.
It was an insidious offense that took place over time, you had time to back out, you had

25

time to be remorseful because you escalated from a kiss to fondling to other molestation levels.  You had time to back out each time.  Each time you could have said, what am I doing.  Each time you could have looked at yourself in the mirror and said, why am I engaging in such conduct, what am I doing to this little girl, what trust am I violating here, yet you had the opportunity to back out and you rejected each opportunity and you went back at it and you escalated.

Those separate crimes deserve punishment and that's the additional year.  It's a conduct and it's a history of criminal conduct that shows it's necessary.  In this case the harm you caused by the multiple offenses was so great that a single prison term wouldn't adequately protect it.  I gave you the five years because of a number of issues and a proper one is as the [victim's family members] have noted themselves.  There is no remorse, there is no sorrow, there is no regret and, therefore, you're still a dangerous individual as far as the Court's concerned because you've taken the martyrdom routine here and taken it to new heights.

The first step in rehabilitation is some remorse, some acceptance of the seriousness of the crime, otherwise the recidivism factor is all the greater because an individual who has no remorse has done nothing wrong, there is nothing to rehabilitate.  There is nothing to do but continue the martyrdom . . . .  And that's why people are in the penitentiary is their inability to accept responsibility for the consequences of their actions, which lead to greater, greater crimes, greater offenses and your offense is right on top, right on top of the list here, felony five.

For the reasons I've already stated I think all the statements of the past trial and the evidence and the presentence investigation, the sentence will remain the same, the five years for rape, one year for the GSI.  You might say, gee, you can give him six or you can give him seven years on the rape and there is none of this consecutive issue.

When I do that as a Court I want the individual to understand there is a separate punishment for the separate crimes.  If we just run all crime concurrent that wasn't the intention of the legislation or the intent of the criminal law.  We want to give a specific message to the individual doing the time that there is a consequence for each crime committed.

And I agree that the sentence was light with both sides from the – the state and the victim, but the light sentence is that you don't have a prior criminal record and heavy from the defense side in that the . . . heavy in the sentence you're getting more than someone in another instance might get because you took advantage of your religious position of trust with the family and the little girl.  That was your door into this, that was your – that's your key to this girl's heart and to the family and into the opportunity to exploit the little girl.

Transcript of Proceedings, June 27, 2003, Answer, Exh. 21, pp. 20-24 (punctuation in the original).

Although the court's reasoning is not entirely clear from the transcript, it appears that the

court sentenced Shafer to a sentence greater than the presumptive three-year minimum for rape

because Shafer did not show remorse and because he took advantage of a position of trust to commit

the crime.  These were factual findings made by the court.  Thus, the court sentenced Shafer beyond the statutory maximum to which the court otherwise could have sentenced Shafer by making additional judicial findings of fact.  This is in direct violation of the holdings in *Blakely* and *Apprendi*.

The court seems to have sentenced Shafer to consecutive sentences for two reasons.  First, the court found that Shafer failed to show remorse.  This indicated to the court that Shafer was not rehabilitating himself and was likely to pose a future danger to the public.  Second, the court seemed to find that Shafer deserved consecutive sentences because the harm caused by his multiple offenses was so great that consecutive sentences were not disproportionate to the seriousness of Shafer's conduct and to the danger he poses to the public.  Under Ohio law, a finding that consecutive sentences are appropriate for the latter reason also requires a finding that at least two of the multiple offenses were committed as part of one or more courses of conduct and that the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Shafer's conduct.  Such a finding would be consistent with the court's sentencing statement.  That Shafer showed no remorse, that the harm caused by Shafer's multiple offenses was so great that consecutive sentences were not disproportionate to the seriousness of Shafer's conduct, and that the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Shafer's conduct are all findings of fact.  The court could not have sentenced Shafer to consecutive sentences without making at least one of these judicial findings.  For this reason, sentencing Shafer to consecutive terms of imprisonment violated

the holdings of *Blakely* and *Apprendi*.

The state court's sentencing of Shafer to five years for rape and to consecutive sentences for rape and gross sexual imposition was contrary to the holdings of the Supreme Court in *Blakely* and *Apprendi*, and that law was clearly established before Shafer's sentence was final. For this reason, the magistrate judge recommends that the court grant Shafer's petition with regard to his fifth ground for relief.

IV

This is not a case which garners sympathy for the defendant. Nevertheless, this court has taken an oath to uphold the Constitution and laws of the United States. Reluctantly, for the foregoing reasons the magistrate judge recommends that the court: (1) grant Shafer's petition for a federal writ of habeas corpus with respect to Shafer's sentence for rape beyond the minimum three-year term and his consecutive sentences; (2) give the state the option of re-sentencing Shafer; and (3) overrule all other grounds for relief.


Date:  November 8, 2006          /s/Patricia A. Hemann
                                 Patricia A. Hemann
                                 United States Magistrate Judge

**<u>Objections</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See also Thomas v. Arn,* 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).